IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RUFUS L. BELDING, | ) Civil Action No. 3:04-2416-JFA-JRM |
| Plaintiff, | ) |
| vs. | ) |
| GEORGE GINTOLI; W. RUSSELL HUGHES, IN THEIR PERSONAL CAPACITIES; AND SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH, FOR INJUNCTIVE RELIEF, | ) ) ) ) ) ) |
| Defendants. | ) **REPORT AND RECOMMENDATION** ) |

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 on July 23, 2004.[1] He has been involuntarily committed to the South Carolina Department of Mental Health ("SCDMH") as a Sexually Violent Predator ("SVP") pursuant to the South Carolina Sexually Violent Predator Act ("SVP Act"), S.C. Code Ann. § 44-48-10 et seq. Plaintiff is in the Behavioral Disorders Treatment Program ("BDTP"). Defendants are the South Carolina Department of Mental Health ("SCDMH"); SCDMH Director George Gintoli ("Gintoli"); and Russell Hughes ("Hughes"), the Chief Executive Officer of Columbia Behavioral Health Systems.[2]

---

[1] This action was originally filed on July 23, 2004, by four persons civilly committed to the custody of the South Carolina Department of Mental Health (Civil Action 3:04-2322-JFA-JRM). On July 27, 2004, the undersigned ordered that Kris Sarayn Kollyns remain as the sole plaintiff in the lead action and separate civil action numbers be assigned to the other plaintiffs.

[2] Gintoli and Hughes provide that their salaries are paid by the State of South Carolina.

On August 23, 2005, the undersigned recommended that Defendants' prior motion for summary judgment (filed January 5, 2005) be granted. Plaintiff filed objections on September 6, 2005. On September 23, 2005, the Honorable Joseph F. Anderson, Jr., Chief United States District Judge, District of South Carolina, adopted the report in part, as to Plaintiff's Trust Fund Account claims. Judge Anderson rejected the report as to Plaintiff's medical claims and Defendants' immunity defense. Specifically, Judge Anderson wrote:

> the court rejects the portion of the magistrate judge's report relating to the motion for summary judgment on plaintiff's medical claims (p. 4-7 of Report) and defendants' immunity (p. 9-12 of Report) on the basis of the current record. The court remands the case back to the magistrate judge with instructions to order the defendant to provide the court with plaintiff's dental record, together with an affidavit(s) from plaintiff's treating dentist(s) as to the medical necessity or non-necessity of dentures for plaintiff.

Judge Anderson's September 23, 2005 Order at 6. Plaintiff filed an amended complaint on September 23, 2005. On December 1, 2005, Defendants filed what are purportedly all of Plaintiff's dental records in their possession[3] and an affidavit from Dr. Michael Rabkin ("Rabkin"), D.D.S. Defendants filed a renewed motion for summary judgment on January 3, 2006. Because Plaintiff

---

[3]Defendants wrote:

Provided herewith are the medical records of Plaintiff, as best they can be located at this time. It is believed that said records may be incomplete, as some departmental records have been inadvertently misplaced in the recent past. Moreover, the Administrative Offices of the [BDTP], in which Plaintiff is housed (not located in the same premises with the Unit, itself) have been forced, in the last week to be unexpectedly evacuated and relocated due to a determination that the building, located on the grounds of the old Crafts-Farrow State Hospital, contains an unacceptable and dangerous amount of asbestos. Should further records be located, they will immediately be provided to the Court.

Defendant's December 1, 2005 Response. With their renewal of their motion for summary judgment, Defendants provided copies of referrals of Plaintiff to the dental clinic by Dr. Jose J. Chavez dated November 21 and December 30, 2005. No further medical or dental records have been provided.

is proceeding pro se, he was advised on January 6, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on February 7, 2006.

## DISCUSSION

The remaining claim in this action concerns whether Plaintiff's Fourteenth Amendment rights were violated because Defendants did not supply him with dentures. Plaintiff requests injunctive relief and monetary damages. Defendants argue that they are entitled to summary judgment because: (1) they have violated no constitutionally protected rights of Plaintiff; (2) Defendants are entitled to Eleventh Amendment immunity; and (3) Defendants are entitled to qualified immunity.[4]

### A.     Fourteenth Amendment Claim

Plaintiff alleges that his constitutional rights were violated because Defendants failed to provide him with dentures. Defendants appear to claim that they have violated no constitutionally protected rights of Plaintiff because dentures did not become medically necessary for Plaintiff until December 2005, at which time Plaintiff was referred to Dr. Rabkin to have dentures provided at no

---

[4] Defendants Gintoli and Hughes also appear to contend that they cannot be held liable on a theory of respondeat superior. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985). Plaintiff, however, appears to claim that Defendants Gintoli and Hughes were responsible for creating the policies which resulted in the denial of his dentures.

3

cost to Plaintiff. Plaintiff appears to argue that dentures were medically necessary in 2001 and that he is entitled to monetary damages for the delay in providing them.

Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. Youngberg v. Romeo, 457 U.S. 307, 324 (1982). Due process requires that the conditions and duration of confinement under the SVP Act bear some reasonable relation to the purpose for which persons are committed. See Seling v. Young, 531 U.S. 250, 265 (2001); Youngberg v. Romeo, supra. The Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own. DeShaney v. Winnebago, 489 U.S. 189, 200 (1989); Youngberg, 457 U.S. at 324.[5]

In deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must balance the individual's liberty interest against the relevant state interests, but deference must be given to the decisions of professionals. Youngberg, 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323. Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal operations of state institutions. Id. at 322.

---

[5]The Eighth Amendment deliberate indifferent standard applies to convicted prisoners. To establish a constitutional violation under that standard, a prisoner must show that prison officials were deliberately indifferent to a serious medical need. See Farmer v. Brennan, 511 U.S. 825 (1994); Estelle v. Gamble, 429 U.S. 97 (1976).

To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints. Patten v. Nichols, 274 F.3d 829 (4th Cir. 2001). While courts have not adopted a consistent standard, there is agreement that the professional judgment standard requires more culpability than mere negligence. Compare Yvonne L. v. New Mexico Dep't of Human Servs., 959 F.2d 883, 894 (10th Cir. 1992)(doubting whether "there is much difference" between the deliberate indifference standard and the Youngberg standard), with Doe v. New York City Dep't of Soc. Servs., 709 F.2d. 782, 790 (2d Cir. 1983)(stating that in Youngberg, "the Court adopted what is essentially a gross negligence standard"); see also Shaw v. Strackhouse, 920 F.2d 1135, 1146 (3d Cir. 1990)("Professional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct.").[6]

There is a genuine issue of material fact as to when dentures became medically necessary for Plaintiff. Dr. Rabkin states that the condition of Plaintiff's mouth "has degenerated to the state where it is my opinion that [Plaintiff] now needs partial dentures to maintain good oral function and to facilitate [] receiving adequate nutrition. There is now a clear medical need for [Plaintiff] to receive these services." He opines that Plaintiff needs an upper full denture and a partial lower denture. Rabkin Aff., Paras. 3-4. Plaintiff claims that on approximately August 9, 2001, the dentist

---

[6]Although it is unclear what constitutes failure to meet the professional judgment standard, it is at least co-extensive with deliberate indifference as discussed above. In certain circumstances, the failure to provide basic corrective/medical devices may amount to deliberate indifference to a serious medical need. See Large v. Washington County Det. Ctr., 915 F.2d 1564 (4th Cir. 1990)(unpublished); Newman v. Alabama, 503 F.2d 1320, 1331 (5th Cir. 1974) (failure to provide eyeglasses and prosthetic devices can constitute deliberate indifference), cert. denied, 421 U.S. 948 (1975); Hunt v. Dental Dep't, 865 F.2d 198 (9th Cir. 1989) (loss of dentures for three months and prison officials' failure to take any action to relieve prisoner's pain or to prescribe a soft food diet until new dentures could be fitted stated a claim of deliberate indifference).

5

asked him if he wanted dentures, he told the dentist that he could not afford dentures, the dentist told him that the dentist would find money for the dentures, and BDTP employee Brenda Young-Rice told Plaintiff that he could work extra to pay for the needed dentures. See Plaintiff's Amended Complaint at 1.

Defendants claim that there was a gradual deterioration of Plaintiff's oral condition such that there now exists a medical need for dentures.     The dental records provided by Defendants, however, indicate that Plaintiff only received dental treatment from February to November 2001 and not again until December 2005.  By November 2001, Plaintiff had no upper teeth and only four lower teeth.  Plaintiff's Medical Records (Attachment to Defendant's December 1, 2005 Reply). Dr. Rabkin has expressed no view as to whether the dentures were necessary prior to that time. Although a soft diet was prescribed for Plaintiff in 2001,  Plaintiff claims that he only received the prescribed soft diet for two or three days.   He also claims that he has suffered mouth sores, could not chew food, and had to swallow foods whole.  Although Defendants claim that the records do not indicate that Plaintiff sought "medical" assistance for pain or difficulty in eating, they have not provided any of Plaintiff's medical records other than 2001 and November and December 2005 medical referrals to the dentist.[7]  Additionally, Plaintiff claims that he was not examined by Dr. Rabkin until December 13, 2005, after the time of Rabkin's December 1, 2005 affidavit.

---

[7]Although Defendants filed an affidavit from Sandra Bell, Records Clerk for BDTP, stating that she has produced all of Plaintiff's medical and dental records to Defendants' attorney, it is unclear whether all of those records were submitted to the court.  Further, Defendants have not provided any affidavits or records to support their contention that Plaintiff did not request further dental care from November 2001 to the time of his amended complaint (September 2005).

6

B.     Eleventh Amendment Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.[8]

---

[8]Plaintiff requests the injunctive relief of having dentures provided at no cost to him. As
(continued...)

C.      Qualified Immunity

Defendants Gintoli and Hughes also claim that they are entitled to qualified immunity. Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The analysis of the defense of qualified immunity is examined using a two-step analysis. See Saucier v. Katz, 533 U.S. 194, 201 (2001). The first task is to determine whether the plaintiff has alleged the deprivation of a constitutional right. Id. at 200-201. If the answer is yes, the next task is to determine whether the right was clearly established at the time of the alleged incident. See Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). As discussed above, there is a genuine issue of material fact as to whether Defendants violated Plaintiff's constitutional rights. Defendants, in their renewed motion for summary judgment, have not addressed whether the right was clearly established.[9]

## CONCLUSION

Based on review of the record, it is recommended that Defendants' renewed motion for summary judgment (Doc. 44) be granted as to Defendant SCDMH, granted as to Plaintiff's claims

---

[8](...continued)
Defendants have now stated that they will provide Plaintiff with dentures and pay the cost thereof, it appears that Plaintiff's request for injunctive relief is now moot.

[9]In their previous motion for summary judgment, Defendants appear to claim that the right was not clearly established as to those medical services that were not medically necessary. As discussed above, however, there is a dispute as to whether dentures were medically necessary for Plaintiff prior to December 2005.

8

against Defendant Gintoli and Hughes in their official capacities, and denied as to Plaintiff's claims for monetary damages against Defendants Gintoli and Hughes in their individual capacities.

                                            Respectfully submitted,

                                            s/Joseph R. McCrorey  
                                            United States Magistrate Judge

June 21, 2006  
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
&
The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201